UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| VALUE VINYLS, INC., | : | Court No.: |
| | : | 01-00896 |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant | : | |

## COMPLAINT

Plaintiff Value Vinyls, Inc. (hereinafter "Plaintiff"), by and through its attorneys, Givens and Associates PLLC, hereby alleges as follows:

## STATEMENT OF THE CASE

1. This action contests the classification by the United States Customs Service (hereinafter "Customs") of certain vinyl laminated and coated fabrics imported by Plaintiff at the Port of Los Angeles during the period beginning in November 1998 and extending thereafter through October of 2000.[1]   More particularly, the involved product is in sheet form of woven textile fabric, of a single polyester man-made fiber, coated or laminated such that it is completely encased or covered on both sides with compact polyvinyl chloride (PVC) non-cellular plastic (vinyl coated or laminated articles of such textile composition are commonly known as "supported" vinyls).

2. Value Vinyls, Inc. is the importer of record of the merchandise on the entries involved in this action.

## JURISDICTION

3. This Court's jurisdiction over the subject matter of this action exists pursuant to 28 U.S.C. §1581(a) in that this action arises from Customs' denial of the timely protests which are the subject matter of this action and from the subsequent filing of a timely summons.

4. Exhibit A attached sets forth the involved protests and the related entry numbers, liquidation dates, and protest denial dates.

---

[1]    Further entries of Plaintiff have been protested and recently denied. Further court filings on behalf of Plaintiff are expected.

5. All liquidated duties, including any interest due thereon (if applicable), have been paid respecting the entries involved in the protests which are the subject matter of this action.

DECISION CONTESTED AND CLAIMS AND CONTENTIONS OF THE PARTIES

6. The competing tariff provisions at issue are 3921.90.1950, asserted by Customs to be the correct classification, and 3921.90.11, which Plaintiff asserts is the correct classification:

| 3921 | Other plates, sheets, film, foil and strip of plastics: | | | | |
|---|---|---|---|---|---|
| | Cellular | | | | |
| 3921.90(EN) | | | | | |
| | Other: | | | | |
| | Combined with textile materials and weighing not more than 1.492 kg/m2: | | | | |
| | Products with textile components in which man-made fibers predomi-nate by weight over any other single textile fiber: | | | | |
| 3921.90.11(EN) | | | | | |
| 00 | Over 70 percent by weight of plastics................... m2.....v kg | | 4.2% | Free (A,CA,E,IL, J,MX) | 25% |
| 3921.90.15(EN) | | | | | |
| 00 | Other...................(229) m2.....v kg | | 6.5% 3.4% | Free (B,CA,IL) (MX) | 84.5% |
| 3921.90.19(EN) | | | | | |
| | Other.............................. | | 5.3% | Free (A+,B,CA, E*,IL,J*) | 40% |

7. In liquidation, Customs rejected the importer's entered and claimed classification under subheading 3921.90.11.00. Instead, Customs classified the subject sheets under subheading 3921.90.19.50, which appears in the "Other …Other" sequence after 3921.90.11.00. In denying the Importer's protests, Customs explained that its denial was based upon the court's holding in *Semperit v. U. S.*, 855 F. Supp. 1292 (CIT 1994), which dealt with the classification of conveyor belts which had been liquidated by Customs under subheading 4010.91.15, but which the Court ultimately determined were classifiable under HTSUS 4010.91.19. In the course of reaching its decision, the Court in *Semperit* interpreted the phrase **"[M]an-made fibers [shall] predominate by weight over any other single textile fiber"** appearing in 4010.91.15 as necessarily excluding imported belts having only one class of fibers, man-made fibers, and thus rejected this classification with respect to the involved conveyer belts, which included only man-made fibers. Thus, *Semperit* held that the above-quoted language in subheading 4010.91.15 requires the existence of two classes of textile fibers – one man-made and the other vegetable or

2

animal.  Since polyester, a man-made fabric, is the only fiber encased within Value Vinyl's instant vinyl sheets, Customs reasoned that this precluded its classification under subheading 3921.90.11.00, which contained "predominates" language like that reviewed in *Semperit.*  See HQ 955343 of 10/12/94 and HQ 963747 of 6/25/01.


8.  However, the *Semperit* court expressly qualified its adoption of the common meaning thusly: **"Because nothing in the statute or any other source suggests a contrary legislative view** [of the involved conveyor belt provision, HTSUS 4010.91.15], **the court must construe the term ['predominate'] according to its  common or popular meaning."** *Semperit supra,* at p. 1298 (emphasis added).  There seems little doubt that, had the  the *Semperit* court found legislative history indicating a contrary legislative view (intent), it would have deferred to the legislative view (intent) over common meaning.

Unlike the legislative history of  HTSUS 4010.91.15 reviewed in *Semperit,* the legislative history of HTSUS 3921.90.11 "suggests a contrary legislative view."  In fact, the legislative history of HTSUS 3921.90.11 strongly suggests that Congress intended that provision to cover textiles of man-made fibers, including textiles entirely of man-made fibers, which are coated with plastics (such as Plaintiff's sheets of woven polyester coated with PVC).


Legislative History of HTSUS 3921.90.11 and  its TSUS Predecessor, 355.81


9.  Congress' deliberations respecting TSUS 355.81 in 1965 reflect an intent that this provision be used for textiles of man-made fibers coated with plastics, including textiles entirely of man-made fibers.  Also, Congress' actions in 1984 in passing legislation containing an amendment to Headnote 2(c) governing TSUS Items 355.65-85 (which includes including Item 355.81) further evidence Congress' intent that textiles of fibers which are entirely man-made were to be included in 355.81, the predecessor of HTSUS 3921.90.11.


10.  In the course of considering the Tariff Technical Amendments Act of 1965, Congress stated its intent that TSUS item 355.81 (the predecessor to HTSUS 3921.90.11) would be the provision covering "rayon fabrics covered with or in chief value of rubber or plastics" --"rayon" being at that time a generic term for "man-made." *See* H.R. Rep. No. 342, 89th Congress, 1st

3

Session, p. 12 (1965). Importantly, "rayon" itself is entirely man-made, being a "manufactured fiber composed of regenerated cellulose.[2]"

11. Subsequently, in the Trade and Tariff Act of 1984, Congress amended Headnote 2(c) governing TSUS subheadings 355.65 through 355.85 to add the words "or value" after the phrase "without regard to relative quantities:"

> 2. *For the purposes of the tariff schedule --*
>
> *(c) Provisions in this subpart for fabrics coated or filled with rubber or plastics material...cover products weighing not over 44 ounces per square yard without regard to the relative quantities **or value** of the textile fibers and the rubber or plastics material....*

12. The purpose of this amendment, effected via Pub. L. 98-573, 98 Stat. 2943 (1984), was to remedy confusion which had arisen with respect to the meaning of the term "chief value"[3] To explain, previously, the 1983 proposed conversion respecting HTSUS subheading 3921.90.11 had provided for "Products [of plastic coated textiles] in which the textile material is in chief value of man-made fibers." Thus, Congress' 1984 amendment to Headnote 2(c), the wording change to subsection 3921.90.11 in 1987 which deleted "chief value" and provided, instead, for "Products with textile components in which man-made fibers *predominate* by weight over any other single textile fabric" reflects Congress' concern as to confusion which had arisen respecting the meaning of the term "chief value," and not an intention by Congress to stray from its previous course of designating HTSUS subheading 3921.90.11 (the successor to TSUS subheading 355.81.00) as the subheading to be used for textiles of man-made fibers which are coated with plastic (including those **wholly** of man-made fiber). Further, the effect of Headnote 2(c) was to clarify and emphasize that the provision for man-made textiles coated with plastic (355.81, predecessor to 3921.90.11) was in fact intended to include textiles which were **entirely** of man-made fibers.

---

[2]    Dictionary of Fiber and Textile Technology, p.127
[3]    The Courts had been applying a chief value test to govern the classification of laminated fabrics of textile and plastic over the strong objections of the importing community. For example, in U. S. v. Canadian Vinyl Industries, 555 F.2d 806 (1977), C.A.D. 1189, the Court, using a chief value test, treated materials of polyurethane and nylon as supported plastics under TSUS Schedule 7, rather than as textiles combined with plastic materials under Schedule 3, over the importer's objection that "Congress did not mean the chief value test to govern the classification of laminated fabrics of textile and plastic." *See also* U. S. v. Elbe Products Corp., 68 CCPA 72, 655 F.2d 1107 (1981).

13. Importantly here, the above 1984 change to Headnote 2(c) was applicable to TSUS Items 355.65 to 355.85 inclusive[4], but it was not applicable to those TSUS subheadings (358.14 and 358.16), the predecessors to the HTSUS provisions being considered in *Semperit*. For a review of the provisions involved in *Semperit, see* pp. 7-8 *infra.* **The *Semperit* Court did not have before it a provision whose legislative history provided for classification "without regard to the relative quantities or value of the textile fibers and the rubber or plastics material," as did Headnote 2(c), nor did it have Congressional deliberations from 1965 reflecting its intent that the involved textiles could consist entirely of a man-made fiber (i.e., rayon).**

The *Semperit* Court, in stating that its interpretation of "predominates" in terms of common meaning was arrived at "because nothing in the statute or any other legislative source suggests a contrary legislative view," was reiterating the principle that, where a legislative source *is* available to clarify meaning, that source is preferred over common meaning in arriving at the correct interpretation of a tariff provision. That same principle applied to interpretation of TSUS 355.81 and its HTSUS successor, 3921.90.11 will result in an interpretation of the "predominate . . ." language different from that reached in *Semperit*.

### Customs' Position Conflicts with Legislative Intent as Reflected in the TSUS/HTSUS Conversion Schedule

14. In *Semperit* the court noted that " in changing from the former TSUS to the current HTSUS, Congress did not intend to alter a particular classification or tariff rate." *Semperit, supra* at p. 1296. Also in *Semperit*, the court decision resulted in the classification of the conveyor belts under the HTSUS provision which was the clear successor to the TSUS provision classifying such belts.

However, with regard to the classification of Value Vinyls' merchandise, Customs has abandoned the HTSUS provision (3921.11.00) which is the successor to the earlier TSUS provision (355.81) governing such vinyl sheets. The TSUS/HTSUS Conversion Schedule plainly evidences that HTSUS 3921.90.11 was the intended successor of TSUS 355.81, which provided for "...textile materials coated... with plastic...of man-made fibers...over 70 percent

---

[4]    *See Spradling International v. U.S.*, CIT Slip. Op. 93-10 at p. 23.

by weight of rubber or plastics.5" TSUS 355.81 was formerly used by Customs for classification of man-made fibers coated with plastic. HTSUS subheading 3921.1950, which Customs deems applicable, is a successor to TSUS subheading 355.8500 which provided for plastic coated textiles "other [than man-made fibers]." Thus, Customs' present interpretation requires that HTSUS subheading 3921.1911 be read to exclude textile materials which are 100% of man-made fibers (relegating them to HTSUS subheading 3921.1950, the "other...other" provision), and to include within 3921.1911 only those which are 99%, or less, of man-made fibers – an interpretation which turns the legislative intent on its head.

15. The Court of Appeals for the Federal Circuit has given weight to the Conversion Schedule and has applied it to determine legislative intent:

"Support for this reading arises in the legislative history , which stresses that the purpose of the rewritten tariff schedules was not to make significant rate changes, but simply to convert to 'harmonized' nomenclature. As President Reagan said in initiating this conversion: 'In converting the tariff schedules the Commission should avoid, to the extent practicable and consonant with sound nomenclature principles, changes in rates of duty on individual products.'"

"It is highly relevant that Congress and the executive stated their intention to maintain generally revenue neutral tariff treatment in converting to the nomenclature of the HTSUS."
*Anhydrides & Chemicals, Inc. v. U. S.* 130 F. 3d 1481, 1483-85 *(CAFC 1997)*, attached as Exhibit A, citing 46 Fed. Reg. 47895 (ITC 1981).

In this case, the CAFC also restated its holding in *Hemssheidt Corp. v. U. S.*, 72 F.3d 868, 872 (CAFC 1995) that "Nothing in the HTSUS indicates that Congress instructed Customs to cease its established and uniform practice regarding the subject articles."

### *Semperit* Confirmed that Changes in Wording from "Chief Value" to "Predominate" did not Warrant Divergence from Past Classification Practice

16. The Court of International Trade (CIT) in *Semperit* held that the change in the "chief value" language used in 1983 to "predominate" in 1987 re conveyer belts of coated textiles did

---

[5] In *Semperit*, the legislative history reflected in the Conversion Schedule did not conflict with or provide a contra indication respecting the subheading which the Court found applicable; because, as the Court noted, the HTSUS subheading found applicable correlated with the TSUS provision which Customs had previously used to classify the involved conveyer belts. In our case, the HTSUS provision urged by the government does not correlate with the TSUS provision formerly used to classify the involved woven polyester coated with PVC.

not reflect an intention by Congress to diverge from the principles set forth in the ITC Report concerning adherence to the Conversion Schedule and to the former TSUS provision reflected in such Schedule. In *Semperit*, the government (defendant) was urging an HTSUS classification which did not correlate under the Conversion Schedule with the former TSUS provision used by Customs to classify the involved conveyer belts. The government argued that this divergence from the Conversion Schedule was justified, because of a subsequent language change in the involved HTSUS provision which deleted "chief value" and replaced that phrase with "predominate." The CIT rejected the government's argument and held that the correct HTSUS classification was that which correlated in the Conversion Schedule with the former TSUS provision used to classify the conveyer belts. *See Semperit* at pp. 1297, 1300.

17. Thus the *Semperit* Court recognized that the change from "chief value" to "predominates" did not have the effect of altering the subheading correlation set forth in the Conversion Schedule to the TSUS provision formerly used to classify the involved merchandise. That finding applies with equal force respecting subheading 3921.90.11, as is reflected in the following comparison:

| **Materials in Semperit** | **Materials in the Instant Case** |
|---|---|
| **1983 Proposed Changes TSUS to HTSUS** | **1983 Proposed Changes TSUS to HTSUS** |

| | | | | |
|---|---|---|---|---|
| 4010 | Conveyor or transmission belts or belting, of vulcanized rubber: | 3921 | Other plates, sheets, film, foil and strip, of plastics: | |
| 4010.10 | Of trapezoidal cross section (V-belts and V-belting): | | Cellular:<br>*** | |
| 4010.10.10 | Combined with textile materials<br>In <u>chief value</u> of cotton<br>Other | 3921.90 | Other:<br>Combined with textile materials and weighing not more than 1.492 kg/m2:<br>Products in which textile material is in <u>chief value</u> of man-made fibers: | |
| 4010.10.50 | Other<br>Other: | | | |
| 4010.91 | Of a width exceeding 20 cm:<br>Combined with textile materials: | | | |
| 4010.91.11 00 | In chief value of vegetable Fibers or vegetable fibers and rubber | 3921.90.11 00 | Over 70 percent by weight of plastics. | |
| 4010.91.15 00 | In chief value of man-made fibers | 3921.90.15 00 | Other. | |
| 4010.91.19 00 | Other | 3921.90.19 00 | Other | |
| | | 10 | Products in which the textile materials in chief value of vegetable fibers: | |
| | | 50 | Other | |

## Materials in Semperit

### 1987 Proposed Changes TSUS to HTSUS

| | | |
|---|---|---|
| 4010 | Conveyor or transmission belts or belting, of vulcanized rubber: | |
| 4010.10 | Of trapezoidal cross section (V-belts and V-belting): | |
| 4010.10.10 | Combined with textile materials | |
| 10 | With textile components in which cotton predominates by weight over any other single textile fiber | |
| 50 | Other | |
| 4010.10.50 | Other | |
| | Other: | |
| 4010.91 | Of a width exceeding 20 cm: | |
| | Combined with textile materials: | |
| 4010.91.11 00 | With textile components in which vegetable fibers predominate by weight over an other single textile fiber | |
| 4010.91.15 00 | With textile components in Which man-made fibers predominate by weight over any other single textile fiber | |
| 4010.91.19 00 | Other | |

## Materials in the Instant Case

### 1987 Proposed Changes TSUS to HTSUS

| | | |
|---|---|---|
| 3921 | Other plates, sheets, film, foil and strip, of plastics: | |
| | Cellular: | |
| | *** | |
| 3921.90 | Other: | |
| | Combined with textile materials and predominates weighing not more than 1.492 kg/m2: | |
| | Products with textile components in which man-made fibers predominate by weight over any other single textile fiber: | |
| 3921.90.11 00 | Over 70 percent by weight of plastics. | |
| 3921.90.15 00 | Other. | |
| 3921.90.19 00 | Other | |
| 50 | Products in which the textile materials in chief value of vegetable fibers: | |
| 50 | Other | |

WHEREFORE, for each and all of the reasons set forth hereinabove, Plaintiff respectfully requests that this Court enter judgment sustaining Plaintiff's protests and holding that the imported merchandise (vinyl laminated and coated fabrics) is properly classifiable under subheading 3920.90.11, HTSUS. Plaintiff further requests that the prior classification decisions issued by Customs in this case be overruled and set aside and that Customs, by and through its duly authorized officials, be ordered to reliquidate the subject entries under subheading 3920.90.11, with refunds as required by law.

Respectfully submitted by
GIVENS & ASSOCIATES, PLLC

Robert T. Givens
Attorneys for Plaintiff
Federal Bar #000043006
950 Echo Lane, Suite 360
Houston, Texas 77024
(713) 932-1540
(713) 932-1542 (fax)

## CERTIFICATE OF SERVICE

*This is to certify that on this 13th day of February, 2002, a true and correct copy of the foregoing Complaint was sent to:*

John Mahon
Acting Attorney in Charge
International Trade Field Office
Commercial Litigation Branch, Civil Division
U.S. Department of Justice
26 Federal Plaza
New York, New York 10278

_____
Robert T. Givens
Givens and Associates, PLLC
Attorneys for Value Vinyls, Inc.

RECEIVED & FILED

2002 FEB 15 P 12 15



IN ACCORDANCE WITH THE PROVISION
OF RULE 5(e). THIS PAPER IS DEEMED
FILED AS OF THE DATE OF MAILING-
TO WIT   2-13-02